IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:21-cv-00097-MR

| | | |
|---|---|---|
| OSCAR PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FNU MORRISON, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of the Complaint [Doc. 1] and on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 4]. Plaintiff is proceeding *in forma pauperis*. [Doc. 9].

**I.  BACKGROUND**

The incarcerated Plaintiff, proceeding *pro se*, filed this civil rights action addressing incidents that allegedly occurred at the Alexander Correctional Institution.[1] He names as the sole Defendant in his individual capacity Mr. Morrison, a security risk group ("SRG") officer at Alexander C.I. [Doc. 1 at

---

[1] According to the Plaintiff, he was transferred to North Carolina Department of Public Safety ("NCDPS") from the Indiana Department of Corrections on February 11, 2020 pursuant to the Interstate Corrections Compact. [Doc. 1 at 3].

1, 10]. Plaintiff alleges that Defendant Morrison violated his rights under the First, Fourth, and Fourteenth Amendments. [Doc. 1 at 2-3]. He seeks declaratory judgment, injunctive relief, compensatory and punitive damages, and a jury trial. [Doc. 1 at 10]. He has also filed a Motion for a Temporary Restraining Order and Preliminary Injunction. [Doc. 4].

## II. STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a

district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Parties

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the complaint but who were served). The allegations directed at individuals not named as Defendants are therefore dismissed without prejudice.

Further, the Plaintiff relies on vague terms such as "prison officials" rather than identifying the individual(s) involved in each allegation. [Doc. 1 at 8]. To the extent that the Court is unable to determine to whom the Plaintiff

refers, these claims are too vague and conclusory to proceed and are dismissed without prejudice.

## B. Retaliation

The Plaintiff alleges that: Officer Morrison attempted to validate the Plaintiff as a gang member, confiscated and screened his property and mail, and charged him with a false disciplinary violation which was ultimately dismissed, but which resulted in 51 days in restricted housing, the loss of his prison job, and demotion to a lower pay grade; and that Morrison took these actions in retaliation for Plaintiff's failure to provide information about an inmate fight, and for "verbally invoking his rights, … complaining in requests, … communicating his intention to pursue legal action, … [and] filing grievances against SRG." [Id. at 2, 4-9].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely

4

affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct."  Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).  In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Taking the allegations as true for the purposes of initial review, and construing the inferences in Plaintiff's favor, the Court concludes that the Plaintiff has stated a retaliation claim against Defendant Morrison.[2]  This claim has passed initial review.

### C. Unreasonable Search and Seizure

The Plaintiff alleges that Officer Morrison searched and read his legal papers, confiscated his legal materials, and confiscated his mail.  [Doc. 1 at 3-8].

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures."  U.S.

---

[2] The Plaintiff's allegations regarding the causal connection between his protected activities and the alleged retaliatory acts are extremely vague.  Whether there is any substance to this connection can be addressed at a later stage of this case.

5

CONST. amend. IV. "The applicability of the Fourth Amendment turns on whether 'the person involving its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action.'" King v. Rubenstein, 825 F.3d 206, 214 (2016) (quoting Hudson v. Palmer, 468 U.S. 517, 525 (1984) (internal quotations omitted)). "[P]risoners have no legitimate expectation of privacy and ... the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." Hudson, 468 U.S. at 530. Thus, to the extent Plaintiff claims that his Fourth Amendment rights were violated by the search and seizure of his property and mail, this fails to state a claim for relief under the Fourth Amendment. See, e.g., Carr v. Zwally, 760 F. App'x 550, 557 (10th Cir. 2019) (rejecting a prisoner's claim that the search and seizure of his legal materials violated the Fourth Amendment). The Court will dismiss this claim.

### D. Due Process

The Plaintiff appears to allege that Defendant Morrison improperly confiscated his mail and legal documents, imposed SRG restrictions, and placed him on restricted housing for 51 days without due process. [Doc. 1 at 3, 8-9].

In order to establish a due process violation, "a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that

6

Case 5:21-cv-00097-MR   Document 12   Filed 02/10/22   Page 6 of 15

he has been 'deprived' of that protected interest by some form of 'state action.'" Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted).  If a plaintiff makes such showing, the court then considers what process was required and whether any provided was adequate in the particular factual context.  Id.

There is no constitutional right for an inmate to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution.  See Sandin v. Conner, 515 U.S. 472, 484 (1995); Meachum v. Fano, 427 U.S. 215, 224 (1976) (prisoners do not have a right to due process in their housing assignments).  Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).  As such, a prisoner does not have a right to due process before placement in a more restrictive housing placement unless the conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citing Wolff v. McDonnell, 418 U.S. 539 (1974)); Wilkinson v. Austin, 545 U.S. 209, 210 (2005).

7

Whether confinement conditions are atypical and substantially harsh is a "necessarily ... fact specific" comparative exercise. Beverati v. Smith, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting Sandin, 515 U.S. at 483-84). For safety or security reasons, "prisons and jails may and routinely do place inmates charged with disciplinary infractions in 'administrative segregation' pending their disciplinary hearings, allowing both prison officials and inmates time to investigate and prepare for those hearings." Dilworth v. Adams, 841 F.3d 246, 255 (4th Cir. 2016); see McKune v. Lile, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"). Whether such constitutes an atypical and significant hardship turns primarily on: (1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether the assignment to administrative segregation had any collateral consequences on the inmate's sentence. Smith v. Collins, 964 F.3d 266, 276 (4th Cir. 2020).

Further, where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327

8

(1986); Hudson v. Palmer, 468 U.S. 517 (1984); see Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975) (under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner). The Parratt-Hudson doctrine does not apply, however, to deprivations that are a "result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982).

On initial review, the Court takes the Plaintiff's allegations as true and liberally construes them together and not in isolation. The Plaintiff asserts that the basis for the disciplinary charge was false with no basis in fact (and thus was dismissed), but that he was nonetheless held in restrictive housing longer than he would have been had he been found guilty. Construing all inferences in the Plaintiff's favor, the Court concludes that the Plaintiff has minimally stated a claim that Defendant Morrison violated his due process rights with regards to SRG and restricted housing. However, the allegations related to his property are insufficient because the Plaintiff appears to allege that these deprivations were contrary to prison procedure. Accordingly, he

has an adequate state remedy for those alleged property deprivations and they are dismissed without prejudice.

### E. Interference with Mail

The Plaintiff alleges that Officer Morrison improperly reviewed, delayed, rejected, and confiscated his mail and, in doing so, violated prison policy. [Doc. 1 at 6-8].

As a general matter, prisoners have the First Amendment right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees). For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband. Wolff, 418 U.S. at 576.

The Plaintiff's allegation that Defendant Morrison failed to adhere to prison policy while handling his mail does not rise to the level of a § 1983 claim absent a plausible allegation of an underlying constitutional violation. See generally Jackson v. Sampson, 536 F.App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison

10

Case 5:21-cv-00097-MR   Document 12   Filed 02/10/22   Page 10 of 15

policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"). The insignificant period of time that Defendant Morrison held the Plaintiff's mail for screening, and the other allegations of mail mishandling, do not rise to the level of a plausible constitutional violation. See Wolff, 418 U.S. at 576. Therefore, the Plaintiff's claim against Defendant Morrison for interference with the mail is dismissed without prejudice.

### F.  Access to the Courts

The Plaintiff alleges that Defendant Morrison confiscated his "legal papers … and legal books to obstruct litigation attempts." [Doc. 1 at 4, 8-9].

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), *aff'd*, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349.

11

Case 5:21-cv-00097-MR   Document 12   Filed 02/10/22   Page 11 of 15

"Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

The Plaintiff's conclusory allegation that Defendant Morrison confiscated his legal materials to frustrate his "litigation attempts" is too vague and conclusory to plausibly allege any actual injury. Accordingly, his claim for denial of access to the courts is dismissed without prejudice.

### G. Motion for Temporary Restraining Order/Preliminary Injunction

The Plaintiff seeks a temporary restraining order and preliminary injunction "to ensure that the Plaintiff is not further retaliated on filing a law suit against prison officials. And that as a result of this civil rights litigation won't be targeted on." [Doc. 4 at 1]. The Plaintiff alleges that he has "irrefutable evidence" to support his § 1983 claims. [Id. at 2]. He requests: Defendant Morrison be prohibited from investigating him; removal of his SRG level 3 designation; that he not be placed in restrictive housing or transferred to another prison; that his mail not be delayed, confiscated, or destroyed for invalid reasons; and that he not be retaliated against. [Id. at 5].

Preliminary injunctive relief is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 20.

Here, Plaintiff's Motion fails. Plaintiff has not established any of the elements that would warrant preliminary injunctive relief. The Court will, therefore, deny Plaintiff's Motion for a temporary restraining order and preliminary injunction.

## IV. CONCLUSION

In sum, the Plaintiff's § 1983 claims for retaliation and violating due process with regard to SRG and restricted housing have passed initial review against Defendant Morrison. The remaining claims are dismissed without prejudice. The Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is denied.

The Court will allow the Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to correct the deficiencies identified in this Order and to otherwise properly state a claim upon which relief can be granted. Any Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the matter will proceed only on the claims described in this Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The § 1983 claims against Defendant Morrison for retaliation and due process violations related to SRG and restricted housing have passed initial review.

2. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

3. The Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 4] is **DENIED**.

4. The Plaintiff shall have thirty (30) days in which to amend the Complaint in accordance with the terms of this Order. If the Plaintiff fails to so amend his Complaint, the matter will proceed only on the claims as provided in this Order.

The Clerk of Court is respectfully instructed to mail the Plaintiff a blank § 1983 prisoner complaint form, an Opt-In/ Opt-Out form pursuant to the Standing Order in Misc. Case No. 3:19-mc-00060-FDW, and a copy of this Order.

**IT IS SO ORDERED.**

Signed: February 10, 2022

Martin Reidinger
Chief United States District Judge